Do you want to move on to the car case now? Yes, thank you, Your Honor. So we'll start your time again. Okay, on the car case. I don't know, how much time does he have on the car case? No, no, he's finished with this case. We're now moving on to the next. Ten minutes, we'll go on to the next case. Is it ten minutes? Yeah, okay. Why don't you start the clock again. May it please the Court, I reserve one minute for rebuttal. So, the issues here, the substantive issues are very much like the issues in the truck rule case. Is there any way in which the standing issues are different? Yes, Your Honor. The standing issue is different, as counsel for the government pointed out, in that here, in the car rule, we don't have a direct challenge to the regulation itself. There was first a petition for reconsideration that was filed, and that petition was denied, and the petitioners are challenging EPA's denial of the administrative petition for reconsideration. Okay. That's the procedural difference. Yes. And how does that change the standing question? I'm not sure, Your Honor, that it changes the standing question. Right, it doesn't. I don't think it does. So, whatever, I guess I'd ask the question this way. If the Court thought you lacked, petitioners lacked Article III standing in the truck case, is there any reason why they would have Article III standing in this case? No, Your Honor, but the converse of that is also true. If the Court found that we did have standing in the truck case. Okay. So the standing issues are identical. I think Your Honor is correct. The applicability of the California rule is the same with respect to trucks and cars? It's a different California rule, but the issue is exactly the same. Yes. Now, I just want to point out, you can respond if you want. You mentioned Larson and the other case. The difference in those cases is they are not coterminous. The regulations there were not coterminous, and here they are. Well, what both of those cases state. I just read them. Yeah. I'm telling you what they said. Okay. They're not coterminous. And so the Court said, well, you know, if you make standing here, you can proceed, because that other regulation about which we're arguing is not exactly the same thing. That's not this case. Well, Your Honor, it may not be this case. Exactly on all fours. But you cited some authority to refute what Judge Tatel was asking you, and the authority is an opposite. So do you have any authority that supports your proposition? I don't believe it's an opposite, Your Honor, for the following reason, that the Supreme Court held that merely removing one cause of the injury meets the redressability requirement. No, that's not what those cases say. The cases say the second regulation. I'm looking at them right now. The second regulation is not the same as the first regulation, and so you're getting rid of one that's a barrier for you. It doesn't answer the question with respect to the second one. If you have two that are exactly the same, that's an entirely different scenario. I understand the question. If you knock out the federal one here, arguably, California is still in place, so you haven't gotten any redress. I think we have because of the history of how California came to apply the federal standard. And there's a very long and complex history here. California wanted to have a much more stringent standard than the federal regulation. And as a result of negotiations between the state government and the federal government, an agreement was reached that compliance with the federal rule will result in compliance with the state rule. What about the NHTSA rule? NHTSA rule applies here too, right? The NHTSA rule applies here too. Can we stay just with the California statute for one second? Sure. So the compromise was that California would adopt the lower federal standard. Right. If the lower federal standard goes away, then one could expect a stricter California standard, right? That may or may not be true. That doesn't help you. Well, I think the point that does help is that California premised its current standard based on the fact that the federal standard is what it is. And if the federal standard were to be vacated, then the reason for California to agree to the federal standard would no longer be there. That's true, but there's no reason for it to rescind it either. And there's no reason to make it weaker. It's just the opposite. Well, it goes back to one cause of the injury being taken away may cause California to rethink its agreement to use the federal rule as compliance with the state standard. You know, I would have thought, I'm a little surprised at your answer, because as I understand, at least with the car rule, and I'll ask the government, this situation is different than with NHTSA. Isn't it true that the California rule says that compliance with the federal rule is sufficient, right? Yes. So why isn't your answer to us, well, if we were to vacate the federal rule and the new rule was less rigorous, California's law would still say compliance with the federal rule is sufficient? I'm sorry, Judge Taylor. You mean if a new federal car rule based on a remand was less rigorous? Right. Isn't that what you want? Yes, yes. And that may ultimately lower the costs to the petitioners. That's why I asked you the question, but I heard you answer, Judge Ginsburg, that at least with respect to the car rule, if we knock out the federal rule, the EPA rule, the state rule will apply, right? That was your answer to Judge Ginsburg. That was my answer. But is that correct? Well, I think you – That was not your best answer. Hang on. I think you formulated it much better than I did. Well, I'm not sure it was better. All right. Okay, well. What about NHTSA? Yeah, but you still have NHTSA, right? We still have NHTSA. Even if my formulation is better with respect to the California rule. California car. California car rule. Yes. You still have NHTSA here, and NHTSA, the NHTSA rule will apply even if – You haven't pointed to anything. I would ask you this question in the truck case. You said you thought the agencies wouldn't apply the NHTSA – that the NHTSA rule wouldn't be applied if the EPA rule was struck down, but you didn't point to anything in it, and counsel for the government stood before us and said that that's not true, that the NHTSA rule will govern even if the EPA rule is struck down. I think that the – So we don't really care about the California rule, do we, when it comes to addressability? Well, I think on the NHTSA issue, the answer of the government was at best speculative because the preambles say that there is one national program governing fuel economy and greenhouse gas emissions, that they're intertwined. One is based on the other. Okay. Yeah, but if we don't read the sentence the way you do to suggest that the NHTSA rule will not go forward if the EPA rule is – if we don't agree with you about that reading of it, then do you agree that – I know you've cited Arlington Heights and Larson, but setting those aside, you have a redressability problem, right? Two things, Your Honor. If the NHTSA rule continues in place, and you have not argued that the NHTSA rules and the EPA rules are any different – in fact, you've argued they're identical – then you've got a problem, right? Well, no, I'm sorry, Your Honor. I'm not arguing that the two are identical. They cover different territories. The NHTSA rule governs fuel economy, whereas the EPA rule governs greenhouse gas emissions. What I said – But the agency announcements say compliance with either one is sufficient. Well, that's what the agency's announcement said, but it also – But what else do they have to go on? That's their official statement. Their official statement is that the two standards comprise one indivisible national program for fuel economy and greenhouse gas emissions. All right, okay. I want to give you an opportunity to respond because I'm sure the government's going to raise – if we ever got to the rule or the merits, the government has raised at least two compelling concerns. One, there's no formal review, and they're entitled to deference on their interpretation, and this is not a matter of central relevance, especially in this case. On both counts, Your Honor, the government is wrong. Here, EPA is interpreting the bare language of the statutory requirement that it does not administer, but with which it must comply. And under those circumstances, no deference is afforded under Chevron or under me. And with regard to the substantial likelihood test or central relevance, if you will, there are a variety of factors. The totality of circumstances is, first, this Court's decision in 1981 in the API case requires submittal. Publication in the Federal Register or on the Internet is insufficient. Second, the language of the Science Advisory Board statute simply requires formal review and comment by other agencies. There's no limitation. You're not answering the question on central relevance, which is like a harmless error. Why is it of central relevance? There is a very clear standard there. Why is this of central relevance? This is of central relevance for the following reason. The Court's decision in 1982 in the Kennecott – This was never even raised until the Petition for Reconsideration, right? I'm sorry? This was only raised at the Petition for Reconsideration, right? Sure. Yes, it was raised in the Petition for Reconsideration. Yeah, only at the Petition for Reconsideration. It wasn't raised before then. It was not. And that's an entirely different issue that we can discuss. Well, it makes me wonder how it can be of central relevance and it doesn't occur to you until – But in any event, why – forget that for the moment. Why is it of central relevance? Okay. This Court's 1982 decision in the Kennecott case held that where EPA failed to include, in the administrative record, documents for public review and comment, that that raised uncertainty with regard to what the comments would have been and what EPA's response to those comments would have been, and that uncertainty raised a substantial likelihood that the rule would have been significantly changed had the documents been included. And the analogy to this case is clear, that here the EPA's failure to submit the proposed rule to the Science Advisory Board raises uncertainty with regard to what the Science Advisory Board would have commented, what EPA's response to those comments would have been, and that raises a substantial likelihood that the rule would have been significantly changed. Add to that the legislative history of the purpose for the Science Advisory Board requirement. That was enacted by Congress in 1979 specifically to deal with the criticism that the agency was facing that its underlying data and scientific analysis that purportedly supported its regulatory decisions were insufficient and inadequate. And in order to deal with that criticism, Congress enacted this requirement that a blue-ribbon panel of experts be given the opportunity to review the underlying data and the science and then present its views to the EPA. So the notion that SAB review will have a substantial likelihood of a significant change in the rule is built into the fabric of the SAB statute. So your argument basically is that any failure to submit to the SAB would satisfy the essential element. No, Your Honor, I'm not arguing that. That's what you just said. No, no, Your Honor. I'm not arguing that, Your Honor. It's such an extraordinary fabric that any time it involves science, the question has to go to the board. No. What did I miss? There is a concept of harmless error, and API deals with that. In API, as you'll recall, in connection with EPA's development of the ozone standard, EPA submitted to the Science Advisory Board a set of criteria documents supporting the standard. The Science Advisory Board commented on those criteria documents. EPA changed the criteria documents, resubmitted them to the Science Advisory Board, and based on another set of comments, EPA changed the criteria documents again. In that case, EPA did not actually submit the ozone standard for SAB review, only the underlying criteria documents for SAB review. And what the court held in that case is under those circumstances, where EPA has already changed the rule twice on the basis of SAB comments, under those circumstances it's harmless error that they didn't submit the final rule, which reflected SAB's comments anyway. That's not the case here. Here we're talking about an utter failure to submit anything in connection with this rule to the EPA. We also have the McClellan Declaration. A 30-year veteran of the Science Advisory Board, who also was chairman of the board's Science Advisory Clean Air Act Committee, saying that there is, under the circumstances of this case, if this rule had been submitted to the SAB for peer review, there is a substantial likelihood that it would have been significantly changed. I think we'll hear from the government. Okay. Thank you, Your Honors. Your Honors, I'd like to pick up on Judge Edwards' central relevance point and actually step back just a moment to take a look at the big picture here with respect to this rule. What petitioners are trying to do here is advance a collateral attack on that rule. And this is a rule which this Court upheld against all challenges in the prior Coalition for Responsible Regulation case. And in that case, and in those challenges, there were no disputes about the technology. It was actually, the rule itself was supported by the industry. The Global Association of Manufacturers intervened on EPA's behalf. And the Supreme Court has actually denied cert in that case. And now, in this case, petitioners are coming with this collateral challenge through the denial of the reconsideration to try to challenge that rule, which they can't do because they haven't challenged it. And not only that, but to challenge it on, essentially, grounds that are not of central relevance because they were never disputed and were upheld. That rule was upheld by this Court previously. When you say that rule, which rule are you talking about? This rule, I'm sorry. Which one are you talking about? The Carr rule. This rule, yes. Well, do we have to, but don't we still have to deal with standing first? Yes, you have to deal with the standing as well as the mootness issue, which I would like to. Well, we don't have to deal with both standing and mootness, do we? You can deal with one or the other. Either one would dispose of this case. So am I right, am I reading, this case is different from the truck rule because in California, the California rule with respect to cars is different, correct? Yes, it is a different rule. Yes, so if we didn't have NHTSA, we wouldn't have a redressability problem here, right? I'm sorry, say that last part again. If we didn't have the NHTSA regulation, we wouldn't have a redressability problem here, right? Because under the California rule, the compliance with a lesser federal standard would be sufficient, right? I'm a little confused about the question because if you didn't have the, that's assuming that if we don't have the NHTSA standard, the EPA changed its rule. Forget NHTSA, you didn't have a NHTSA rule. All we had was the California rule. Correct. Okay, under the California rule, isn't it true that that's different for trucks and cars, that for cars, compliance with a federal rule is sufficient? So if the federal rule is less rigorous, it would still be sufficient? Correct. Okay, so your case for standing here rises and falls on the NHTSA rule, correct? That is for the redressability part of it. Yes. Largely, but I would like to point out, too, that the previous California standard that was in place before the current California standard was actually more stringent. The previous one? Yes. But under the current rule in California, if the federal rule is made less rigorous, wouldn't compliance with the federal rule be sufficient? Yes, that would be sufficient. I'm sorry, Your Honor, I was only pointing that out to spin out the hypothetical if somehow EPA were to revise this rule to make it less stringent. What would happen in the interim? And I was just pointing out the fact that there was previously a more stringent California standard in place. But I'd also like to mention that this court should— Hold on one second, sir. I'm sorry? When they went away from—when California backed off the more stringent standard, did it adopt the federal standard as its own standard, or did it say, we'll do whatever the feds will do? Can I confer with my EPA counsel on that briefly? You can let them answer if you'd like. No, Your Honor. I believe that the compliance with the federal standard would be due to compliance with the California standard, not the California standard itself. Right. California confirms that. So that if the federal standard went away altogether— Then you'd have the more stringent California standard But if—right. But if the federal standard is replaced with a less rigorous federal standard, they could comply—compliance with that would be sufficient in California, correct? Yes. But those are actually—those are hypotheticals, Your Honor, that we shouldn't get into. You have a wobbly case on redressability. Tell us about NHTSA. I'm sorry? NHTSA. Tell us about NHTSA. NHTSA on redressability. Yes. The argument on California, it seems to me, is iffy. Yeah. NHTSA is a stronger argument, I think. And what is it? Yes. It's the same argument as in the truck rule, and that the NHTSA standard is still going to be in place because it hasn't been challenged at all. And so, again, compliance with those fuel economy standards is still going to result in the increased costs that petitioners are concerned about. And what about counsel's argument that in the preamble, it says these are integrated rules to be considered as a whole or something like that? Correct. And that's—they're not correct in saying that. But as the preamble— That's what it says. As the preamble set out, it sets forth, yes, an integrated comprehensive program. Right. But, again, they are separately issued, separately enforceable standards. Different statutes, right? Different statutes, yes. And because there's no challenge here to the NHTSA rule, that's going to remain in place regardless of what happens to the EPA rule. And you're speaking for your client here on that one, right? Yes. The agency, right? Yes. All right. Anything else? Mootness.  Mootness. Mootness. Thank you. Mootness. The mootness issue is fairly straightforward because this CAR rule deals with model years 2012 to 2016. And at the time we wrote our brief, 2016 was not yet in manufacturing stages, but it is now. And so the mootness argument is— How do we know that, by the way? I know you said that in your brief, or you said it somewhere. Where did you tell us that? Well, in the brief, we explained that. I can get you a page cited. No, but how do we know that? Is there something from the agency? I think it's pretty standard. I didn't see a cite. Not from the agency in the record, no, because at that time mootness wasn't an issue. I think it's fairly standard practice that the manufacturing year starts on January 2nd of the prior year for the model year. How would this court know that? I'm sorry? How would this court know that? That's a good question because it's not in the record. Oh, that's why I'm asking. The manufacturing year? Does that mean— Yeah, the manufacturing for the next model year starts in the previous year. So you're saying the 2016 vehicles are on the market in around September? Are being manufactured, yes. They're being manufactured now? As of January 2nd. So you're saying they're starting to be manufactured now? Yes, and will be on the market. They actually—they can be certified as 2016 model vehicles starting in January 2nd of this year, so that's already in there. So in our brief, that wasn't the current state of the facts at that time, but we pointed out that that was going to happen. Is that in the highway—is that—that's a regulatory—I assume there's a regulation that says that? What is it? That's a good question. I don't have the time. Actually, it came up in the February 4th litigation in terms of timing, depending on who was responsible for that January 2nd model. Yeah, it's a different statutory provision. I remember that. What is still within the exception for matters that escape review because of the passage of time? First of all, that's not something petitioners argued in response, but second of all, again, when you look at these particular circumstances, I think that's what you would need to focus on in looking at that exception in terms of whether this is capable of repetition because this SAB review issue is very fact-intensive, and each case is going to be different with respect to whether there was formal review and matters of central relevance. But just in asking whether the manufacturing cycle is such that new rules will escape review because review takes so long if the rule has had its effect, we don't need to look at the SAB issue for that. Correct, but again, this rule has been in place for now four years, five years, so it's not the typical case where something is so short-lived it's not able to be challenged. Why did it take so long in this instance? Petitioners filed their petition for reconsideration long after the rule was issued, and that's what's taken the time to work its way through. Wasn't there a 60-day limit on reconsideration? Yes, and they filed the reconsideration. EPA conducted the reconsideration process, and then that's when they filed this petition. So they filed within the 60 days, or did they not? Yes. Oh, I'm sorry. Oh, yes. Yes, I'm sorry. And did the EPA grant? I mean, they indulged the petition by answering it. Right. Did they construe it as a petition for a new rulemaking? Yes. So procedural one being that it was out of time. Right. Yes. Okay. Anything? No. Anything else? No. Okay. I don't have anything further, Your Honors. Thank you. Thank you. Did counsel have any time left? Okay. You can take two minutes. Thank you, Your Honor. Very briefly, with regard to the model years, as we discussed in connection with the truck rule, these rules will not magically disappear at the end of model year 2016. They form the baseline, if you will, the springboard for future more stringent rulemakings for light-duty vehicles. And so these rules, for all intents and purposes, continue as a baseline below which EPA has indicated that it will not go, but only make the rules more stringent for future model years. With regard to the timing of the petition for reconsideration, I think it's important to note that here, when the rule was first proposed, there was no indication whatsoever that the EPA would fail to comply with the Science Advisory Board statute. What the government would have commenters do during the comment period is essentially list for EPA each and every rulemaking process, procedure, and requirement that EPA needs to go through and then instruct EPA during the comment period not to violate any of those. That would be absurd. The first time when the petitioners suspected that SAB review wasn't obtained was when the final rule was published with no mention of SAB review in the preamble. We then submitted a Freedom of Information Act request. When that came back in the negative, saying that SAB review was not obtained, then we filed a timely administrative petition, which was the first time that it was practicable for us to file that administrative petition. I see the red light is on, and so I thank Your Honor. During the rulemaking, the agency, during the notice and comment, it did list other agencies it would discuss. It just didn't mention the SAB, right? So wouldn't that have been a pretty clear clue that there was about to be a problem? No, Your Honor, because the history of EPA rulemaking is that it has consistently submitted rules to the SAB for review in accordance with this statute since 1979, and with this crop of greenhouse gas emission standards, starting with the endangerment finding, but that's come and gone now. But this particular proposed rule came very much on the heels of the endangerment finding, and there was no indication that for greenhouse gas emission standards, for reasons that are still not clear to the petitioners, EPA would fail to comply with the mandatory SAB duty. Okay, thank you very much. The case is submitted.
judges: Tatel, Edwards, Ginsburg